IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

C.H.,

    Plaintiff,

v.                                                                                                          No. 21-cv-0574 MV/SMV
                                                                           consolidated with
PATRICK HOWARD, DANA CRITCHLOW,                                        20-cv-0190 SMV/GBW
GREGORY A. EWING, and                                                              20-cv-0276 GBW/SMV
LAS CRUCES PUBLIC SCHOOLS,                                                   20-cv-0549 SMV/GBW

    Defendants,

and

TEACHERS INSURANCE COMPANY,

    Plaintiff-in-Intervention,

v.

C.H. and PATRICK HOWARD,

    Defendants-in-Intervention.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before me on two motions: (1) Plaintiff's Opposed Motion to Compel the Continued Deposition of Patrick Howard and for Sanctions for Obstruction of the Deposition (the "Motion to Compel") [Doc. 66] and (2) Defendant Howard's Motion for Protective Order.[1] I heard oral argument on May 11, 2022. Having considered the briefing, oral argument, the record, and relevant authorities, I will grant in part and deny in part both motions.

---

[1] Defendant Howard, represented by two different attorneys, filed two separate motions for protective order addressing different topics raised at Howard's deposition. [Docs. 69, 76]. Howard did not seek leave of the Court to file separate motions. For purposes of the present analysis, the Court will consider the filings as a single motion and refer to them as "Howard's Motion for Protective Order." Counsel are cautioned to consolidate their arguments into a single motion in the future.

**BACKGROUND**

The Complaint alleges that Howard "engaged in educator sexual misconduct with Plaintiff, including subjecting her to sexual grooming, sexual harassment, and sexual abuse, at Las Cruces High School ["LCPS"], and at LCPS-sponsored events . . . ." [Doc. 62] at 3. Plaintiff also alleges that "during the time Defendant Howard was unlawfully touching [Plaintiff] and other females at Las Cruces High School for his own sexual gratification, multiple 'appropriate persons' within LCPS had 'actual notice' Howard was sexually harassing and sexually abusing female students, yet each failed to properly document, investigate or act." *Id*. at 10.

Counsel for Plaintiff, Amanda Carmody, deposed Howard on January 14, 2022. [Doc. 66-1]. Attorneys John Stiff and Jeep Darnell defended Howard at the deposition. *Id*. Carmody sought to question Howard on four disputed topics: (1) Howard's relationship with Darnell before Darnell represented Howard; (2) Darnell's representation of Howard in a related criminal case against Howard; (3) Howard's sexual relationship with his wife, and (4) a class Howard attends or has attended as a condition of probation.

Darnell instructed Howard not to answer questions about his relationship with Darnell. Darnell argued that the information is not relevant to Plaintiff's claims and that the questions somehow "implicated" him in the case. [Doc. 66-1] at 56:25 to 58:18. Darnell also instructed Howard not to answer questions regarding how many times he and Darnell met in connection with the criminal case and who paid Darnell's fees. [Doc. 66-1] at 59:6–25.

Stiff instructed Howard not to answer questions about Howard's sexual relationship with his wife.

```
        Q.  Sure.  If you touched [Plaintiff T.R.] on her butt and you
     23 did not intend to be sexually gratified, but it did
     24 give you gratification that was sexual, is that also
     25 sexual gratification?
      1         MR. STIFF:  Form.
      2    A.  But it didn't.
      . . . .
      6    A.  Okay.  I didn't get the sexual satisfaction off
      7 of it.
      8    Q.  What do you do for sexual gratification?
      9    A.  That would be intimacy with my wife.
        Q.  In 2017, did you have a sexual relationship with
     11 your wife?
     12    A.  Yes.
     13         MR. STIFF:  Whoa, wait a minute.  His
     14 communications with his wife are privileged under
     15 New Mexico law and also privileged under federal law,
     16 so what he does with his wife is not going to be
     17 discussed in today's deposition.
     18         MS. CARMODY:  I'm not asking him for
     19 communications with his wife.  I'm asking him if he had
     20 a sexual relationship with his wife.
     21         MR. STIFF:  The act of intercourse is a form
     22 of communication, we are not going there today.  Sorry.
```

[Doc. 66-1] at 154:11–160:20.

Finally, Howard testified that he is required to attend weekly "state-mandated sex offender classes" pursuant to his sentence in the criminal case. [Doc. 66-1] at 45:5–6. Carmody asked Howard to tell her about what he had learned in the classes, and Stiff objected based on form and relevance. *Id*. at 45:14. Darnell then interjected, stating, "I'm not instructing him not to answer. I have to think about whether there's some sort of [Health Insurance Portability and Accountability Act ("HIPAA")] privilege that we have to deal with or whether those are supposed to be confidential because they're through the probation department." *Id*. at 45:15–20. Later in the deposition, Darnell stated that "there may be some waivers that have to be signed before

3

information regarding probation can be disclosed, and I think a HIPAA release has to be signed as well." *Id*. at 160:21–161:1. He requested that Plaintiff seek information about the classes through interrogatories instead of in the deposition so that "the appropriate waivers" could be obtained. *Id*. at 173:6. In any event, Howard never answered the question.

## LEGAL STANDARD

There are only three circumstances under which it is appropriate to instruct a deponent not to answer a question: "when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2); *Resol. Tr. Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995). Hence, it is improper to instruct a witness not to answer a question based on the question's relevancy, *Resol. Tr. Corp*., 73 F.3d at 266, or because the question is oppressive or harassing. *Isler v. New Mexico Activities Ass'n*, No. CV 10-00009 MV/WPL, 2011 WL 13289706, at *1 (D.N.M. Aug. 18, 2011) (unreported). "In instances of harassment, the counselor's only avenue is to move to terminate the deposition and apply for a protective order under Rule 30(d); he may not only instruct a client to remain silent." *Id*.; *see* Fed. R. Civ. P. 30(d)(3)(A) ("At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party.").

The court may sanction an attorney for improperly instructing a witness not to answer a question. Under Fed. R. Civ. P. 30(d)(2), "[t]he court may impose an appropriate sanction— including reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." *See Layne Christensen Co. v. Bro-Tech Corp.*, No. CIV.A. 09-2381-JWL, 2011 WL 4688836, at *8 (D. Kan. Oct. 6, 2011)

(unreported) (sanctioning an attorney by ordering him to pay the travel costs associated with a continued deposition).

In addition, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927 (West). "Sanctions under § 1927 are appropriate 'for conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court.'" *Resol. Tr. Corp.*, 73 F.3d at 265 (quoting *Braley v. Campbell,* 832 F.2d 1504, 1512 (10th Cir. 1987)).

A deposing party may move to compel disclosure if a deponent fails to answer a question. Fed. R. Civ. P. 37(a)(3)(B)(i). To obtain an order compelling disclosure, the movant must make a threshold showing that the information sought is relevant to a party's claim or defense. *Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB-ADM, 2020 WL 374685, at *2 (D. Kan. Jan. 23, 2020) (unreported); *see* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."). Relevant evidence is that which "has any tendency to make a [material] fact more or less probable than it would be without the evidence . . . ." Fed. R. Evid. 401. "What is 'relevant to the claims or defenses depends on the circumstances of the pending action.'" *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1192 (10th Cir. 2009) (quoting Fed. R. Civ. P. 26 advisory committee's note (2000)).

If it grants a motion to compel, the court must award reasonable expenses to the moving party unless the deponent's nondisclosure was "substantially justified" or an award is otherwise unjust. Fed. R. Civ. P. 37(a)(5)(A). Conversely, if the Court denies a motion to compel, it must require the movant to pay the reasonable expenses in opposing the motion, unless the motion was

substantially justified. Fed. R. Civ. P. 37(a)(5)(B). If the court grants a motion to compel in part and denies it in part, the court "may . . . apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).

Upon a showing of good cause, "a court may issue a protective order regarding discovery 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008) (quoting Fed. R. Civ. P. 26(c)(1)). "The party or person seeking a protective order has the burden to show 'good cause' for it by submitting 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Garrity v. Governance Bd. of Carinos Charter Sch.*, No. CV 20-340 MV/KK, 2021 WL 3033278, at *3 (D.N.M. July 19, 2021) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)).

## ANALYSIS

Plaintiff seeks to re-depose Howard, at Howard's expense, so that her attorney may question Howard on each of the four disputed topics. She also seeks an order prohibiting Howard's counsel from obstructing the deposition. [Doc. 66] at 13. Finally, Plaintiff asks the Court to sanction Howard's counsel for obstructing the first deposition. *Id*. In response, Howard argues that his counsel's conduct at the deposition was proper. He argues that the information regarding his relationship with Darnell is protected by the attorney-client privilege, and that information regarding about his sexual relationship with his wife is protected by the marital communications privilege. Finally, Howard maintains that his attorneys properly instructed him not to answer questions that he deems irrelevant to Plaintiff's claims. [Docs. 68, 69].[2]

---

[2] Howard asserts similar arguments in his Motion for Protective Order. [Docs. 69, 76].

For each of the four topics at issue, I will first examine whether Plaintiff has shown that the information she seeks is relevant under Rule 26(b) and Federal Rule of Evidence 401. I will then examine whether counsel properly instructed Howard not to answer Plaintiff's questions, and whether good cause exists for a protective order. To reiterate, Plaintiff bears the burden of showing that the questions at issue are relevant to her claims, whereas Howard bears the burden of showing that the information Plaintiff seeks is privileged, or that there is good cause for a protective order.

**I. Howard's Relationship with Darnell Before He Retained Darnell.**

Darnell instructed Howard not to answer questions about whether he knew Darnell before retaining him as criminal defense counsel. Darnell argued that the information is irrelevant, and that the question amounts to harassment of Darnell because it somehow "implicated" him in the case. [Doc. 66-1] at 56:25 to 58:18; [Doc. 69] at 8. Plaintiff argues that it was improper for Darnell to instruct Howard not to answer. [Doc. 66] at 5.

The relevancy of the questioning seems obvious. Plaintiff claims that employees of LCPS "had 'actual notice' that Howard was sexually harassing and sexually abusing female students, yet each failed to properly document, investigate or act." [Doc. 62] at 10 If someone at LCPS introduced Howard and Darnell, or arranged for Howard to retain Darnell, that information is relevant to whether and when LCPS had notice of Howard's alleged conduct. It was improper for Darnell to instruct Howard not to answer; a witness must answer despite a relevancy objection on the record. Fed. R. Civ. P. 30(c) ("Evidence objected to shall be taken subject to the objections."). Likewise, Darnell has not shown how Plaintiff's questions implicate him personally or are harassing of him or Howard. Moreover, even if such questions were harassing, Rule 30(d)(1) "does not permit an attorney to instruct a witness not to answer repetitious, harassing or argumentative

7

deposition questions except to present a motion under Fed. R. Civ. P. 30(d)(3)." *Fondren v. Republic Am. Life Ins. Co.*, 190 F.R.D. 597, 600 (N.D. Okla. 1999) (holding that an attorney's instruction not to answer a question because it was harassing was improper where the attorney did not suspend the deposition to seek a protective order under Rule 30(d)(3)). Darnell's only options were to suspend the deposition to seek a protective order or allow Howard to answer the questions. He did neither. I will grant Plaintiff's Motion to Compel and deny Howard's Motion for Protective Order as to this topic.

**II. Facts About Darnell's Representation of Howard.**

Relying on the attorney-client privilege, Darnell also instructed Howard not to answer questions about how many times Howard met with Darnell while Darnell was his criminal defense attorney and who paid Darnell's retainer. [Doc. 66-1] at 59:6–25. Plaintiff argues that facts of Darnell's representation are not privileged because such facts do not reveal any communications between Darnell and Howard. [Doc. 66] at 6–7. Plaintiff also argues that the facts surrounding the attorney-client relationship (when Howard retained Darnell, how many times they met, and who paid Darnell's retainer or fees) are relevant to the issue of whether LCPS had notice of the allegations against Howard and, if so, when. I agree that these facts are relevant.

"The purpose of the [attorney-client] privilege is to encourage clients to make full disclosure to their attorneys." *Fisher v. United States*, 425 U.S. 391, 403 (1976). The privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." The privilege generally does not extend to "source of payment for legal fees," *In re Grand Jury Subpoenas*, 906 F.2d 1485, 1488 (10th Cir. 1990), or "[t]he subject matter of meetings with an attorney, the persons present, the location of the meetings, or

8

the persons arranging the meetings are not protected by the privilege." *Burton v. R.J. Reynolds Tobacco Co., Inc.,* 170 F.R.D. 481, 484–85 (D. Kan. 1997).

In his Motion for Protective Order, Howard argues that an exception to the general rule applies here. Howard relies on a sentence fragment taken from *In re Grand Jury Subpoenas*, in which the Tenth Circuit Court of Appeals stated that "fee arrangements are not protected by the attorney-client privilege" except in "rare circumstances . . . where *an actual client paid the fee and sought advice concerning the actual case under investigation . . . .*" 906 F.2d at 1492 (emphasis added). Howard argues that he sought advice from Darnell concerning the actual case under investigation and, therefore, facts about his meetings with Darnell and who paid Darnell's fees fall within that exception. [Doc. 69] at 10–11.

Howard's reliance on *In re Grand Jury Subpoena* is misplaced. In that case, the Court held that the exception applies only when the advice sought "concerned the case then under investigation *and* disclosure of the client's identity would . . . be, in substance, the disclosure of a confidential communication by the client, such as establishing the identity of the client as the perpetrator of the alleged crime at issue." 906 F.2d at 1492 (emphasis added). As an example, the Court discussed *Baird v. Koerner*, where the clients had given some money to their attorney, who then paid the money to the Internal Revenue Service. *Id*. (discussing *Baird,* 279 F.2d 623 (9th Cir. 1960)). In *Baird*, revealing the source of the money would have "disclosed the confidential communication from the client that he had committed the crime for which he sought advice." *In re Grand Jury Subpoenas*, 906 F.2d at 1492. The *In re Grand Jury Subpoenas* Court then limited the exception to cases factually like *Baird*, and concluded that, since the facts before it were distinguishable from those in *Baird*, the "identity of the source of the fees, the amount of the fees,

9

the manner of payment, the date of payment, the name of any others partially responsible for payment of the fee, and whether any part of the fee came from the client or his family [were not] protected by the attorney-client privilege and thus must be disclosed." *Id*. Howard has not shown how disclosure of the number of meetings he had with Darnell or the source of payment for Darnell's fees would disclose confidential communications or how the facts in this case are like those in *Baird*. Accordingly, I find that these facts are not protected by the attorney-client privilege.

Howard also has not shown how the questions are annoying, embarrassing, oppressing, or unduly burdensome. Hence, he has not shown good cause for a protective order. I will grant Plaintiff's Motion to Compel and deny Howard's Motion for Protective Order on this topic.

### III. Whether Howard had a Sexual Relationship with his Wife in 2017.

Stiff instructed Howard not to answer the question, "In 2017, did you have a sexual relationship with your wife?" [Doc. 66-1] at 154:11–18. Howard argues that the marital communications privilege protects facts about sexual relations because they implicate communication between spouses. He argues that the Tenth Circuit Court of Appeals signaled in *United States v. Bahe*, 128 F.3d 1440, 1445 (10th Cir. 1997), that facts about sexual relationships between spouses fall within the privilege. [Doc. 68] at 3–4.

Plaintiff argues that, even if sexual acts between spouses are communications that fall within the marital communication privilege, the fact that those communicative acts occurred is not privileged. [Doc. 86] at 3. Alternatively, Plaintiff argues that Howard has waived the privilege by claiming that he did not touch Plaintiff for sexual gratification because he received sexual gratification through his relationship with his wife. *Id*. at 6–7; *see In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982) ("When a party reveals part of a privileged communication in order to

gain an advantage in litigation, it waives the privilege as to all other communications relating to the same subject matter . . . .").

I need not decide whether Plaintiff's question invades the marital communications privilege because Plaintiff has not met her burden to demonstrate that Howard's answer to her question is relevant to a claim or defense in this case.

Whether Howard sought sexual gratification by touching Plaintiff is material to Plaintiff's claims. *See Leyva v. Robbins*, 452 F. Supp. 3d 1230, 1250 (D. Utah 2020) (stating that a plaintiff pursuing a claim for sexual harassment under 42 U.S.C. § 1983 "must establish that: (1) the defendant had state authority over [the plaintiff] and (2) the defendant abused that authority for his own sexual gratification") (citing *Johnson v. Martin*, 195 F.3d 1208, 1218 (10th Cir. 1999)). However, Plaintiff has not shown that Howard's answer to her question would make that or any other material fact more or less probable. In other words, even if Howard had no sexual relationship with his wife in 2017, Plaintiff has not shown that, as a result, Howard was more likely to touch Plaintiff. *Cf. People v. Clark*, 261 P.3d 243, 302 (Cal. 2011) (holding that testimony by the defendant's wife that they had not had sex in the two weeks before an alleged rape was properly excluded because, "[t]o infer from such testimony that at the time of the crimes defendant was sexually frustrated and thus motivated to rape [the victim] was highly speculative and thus irrelevant"). Nor has Plaintiff presented any evidence that the lack of sexual gratification in one relationship makes a person more likely to pursue sexual gratification through another relationship.

At oral argument, Plaintiff argued that Howard made his sexual relationship with his wife relevant to his defense by testifying that he did not seek sexual gratification by touching T.R., one

11

of the Plaintiffs, because he was sexually gratified by "intimacy with [his] wife." *See also* [Doc. 86] at 7; [Doc. 66-1] at 154:9–10. Plaintiff referenced the following exchange:

> 23· · ·Q.· ·Sure.· ·If you touched [T.R.] on her butt and you
> 24· ·did not intend to be sexually gratified, but it did
> 25· ·give you gratification that was sexual, is that also
> 1 · ·sexual gratification?
> 2 · · · · · · ·MR. STIFF:· ·Form.
> 3 · · ·A.· ·But it didn't.
> . . . .
> 7 · · ·A.· ·Okay.· ·I didn't get the sexual satisfaction off
> 8 · ·of it.
> 9 · · ·Q.· ·What do you do for sexual gratification?
> 10 · · ·A.· ·That would be intimacy with my wife.

[Doc. 66-1] at 153:23–154:10. But Plaintiff reads too much into Howard's answers. He did not say that his touching of T.R. was asexual *because* he had a sexual relationship with his wife. He merely denied touching T.R. for sexual gratification. Then, when asked directly where he got sexual gratification, he replied that he got it from his wife. Plaintiff infers a connection between the two statements that does not exist. Howard's testimony does not correlate his motivation to touch T.R. or the other Plaintiffs with whether he was sexually gratified by his relationship with his wife as would be necessary to make that relationship relevant to his defense. In *United States v. Black*, for example, the defendant argued that sex with the alleged victim, which he maintained was consensual, had been rough and quick because he was in a hurry. 42 M.J. 505, 513–14 (A. Ct. Crim. App. 1995). The defendant then sought to introduce his former wife's testimony characterizing sex with the defendant as routinely "quick," "rough," and "vigorous." *Id*. at 513. The court held that the former wife's testimony was not relevant because it did not pertain to the defendant's defense that he was in a hurry, stating, "We find that [the former wife's] testimony

about her sexual activities with the [defendant] would not have tended to make more or less probable the [defendant]'s version as to why the sexual intercourse had been so quick, rough, and vigorous." *Id*. at 514 (citing Mil. R. Evid. 401, which is identical to Fed. R. Evid. 401).

Plaintiff also points to deposition testimony from a third party that Howard told her, "[H]e wasn't getting much action at home so he had to take it where he could get it." [Doc. 66-2] at 43:17–23. Howard denies making the statement. Disputed testimony by a third party is not sufficient to show that Howard "opened the door" to evidence about his relationship with his wife.

In sum, Plaintiff has not shown that her question about the existence of Howard's sexual relationship with his wife is relevant to any claim or defense. In addition, there is good cause for a protective order barring this irrelevant and potentially embarrassing topic. *See Johnson v. Libr.*, No. 217CV01280JCMBNW, 2020 WL 1929838, at *3 (D. Nev. Apr. 21, 2020) (granting a motion for protective order where the plaintiff's questions were "irrelevant and would simply embarrass" the defendant); Fed. R. Civ. P. 26(c)(1). Accordingly, I will deny Plaintiff's Motion to Compel and grant Howard's Motion for Protective Order as to this topic.

Having so ruled, I do not take lightly Plaintiff's argument that Howard intends to use his relationship with his wife as "a sword to defend his case . . . and marital privilege" as a shield to Plaintiff's questions about that relationship. [Doc. 66] at 9–10. If I prohibit Plaintiff from conducting discovery into Howard's sexual relationship with his wife, and then Howard is allowed to raise that relationship as a defense at trial,[3] the prejudice to Plaintiff is obvious.[4] That is why I

---

[3] If Howard raises his sexual relationship with his wife as a defense, he will render the topic relevant and waive any protections offered by the marital communications privilege. *See In re Sealed Case*, 676 F.2d at 818.
[4] If my ruling affected only the two cases in which I am the presiding judge, this would be an easy decision because I know how I would handle the issue at trial. But I am mindful that these four cases are consolidated for discovery only, and I do not know how the presiding judges in the other two cases might handle the issue.

13

asked Stiff at oral argument whether Howard would stipulate that he will not raise such a defense at trial. He could not commit to doing so without first consulting his client. That is appropriate. I will, therefore, deny Plaintiff's Motion to Compel on this issue without prejudice, meaning that I will entertain a motion to reconsider if (1) Plaintiff asks Howard to stipulate that he will not raise his relationship with his wife as a defense at trial, and (2) Howard refuses. In that event, I will consider allowing Plaintiff's counsel to briefly depose Howard on this topic, under my supervision.

Turning to Stiff's conduct at the deposition, I find that Stiff did not improperly impede the deposition by instructing Howard not to answer the question regarding his relationship with his wife. This is an area in which the law is unsettled. *Compare, e.g., Stanfield v. Dart*, No. 10 C 06569, 2011 WL 5301784, at *3 (N.D. Ill. Nov. 3, 2011) (unreported) (stating that the plaintiff "frames the discovery question posed to [the defendant]'s wife as simply whether [the defendant] is able to perform a sex act. Yet such an interpretation would vitiate the marital communications privilege.") *with Tatum v. Schwartz*, No. CIVS06-1440 RRB EFB, 2007 WL 1725479, at *3 (E.D. Cal. June 14, 2007) (unreported) ("[T]he fact of communicating, as opposed to the substance of the communication, is not privileged.").

Moreover, the Tenth Circuit, in *Bahe*, suggested that facts about sexual relationships fall within the privilege. In that case, the government sought testimony by the defendant's wife about a specific act that the defendant did when he wanted to have sex with her. *Bahe*, 128 F.3d at 1441. Like Plaintiff, "the government stated it had no interest in the meaning of the act as understood between defendant and his wife, but only in the fact the act occurred." *Id*. at 1444. The *Bahe* Court observed that the government, like Plaintiff, was "attempt[ing] to separate the physical act from the message the physical act was intended to convey" and stated, "This could be done if we view

14

the message narrowly—to "I want sex"—and prevent the wife from testifying about the message. She could testify simply that sometimes her husband performs [a particular] physical act on her." *Id*.

But the Court disapproved of this approach because it would permit a spouse to "testify to every aspect of the marital sexual relationship" and concluded, "[t]here is something inherently offensive in that idea." *Id.* at 1444–45. It also stated that "the accepted norm in this country is that intimate sex acts between marriage partners are communication and an important expression of love." *Id*. at 1444. Ultimately, the Court did not "decide in [*Bahe*] whether testimony about physical acts involving sex between marriage partners are generally within or without the marital communications privilege." *Id*. at 1445. Instead, it held that, even if the privilege applied, an exception would permit admission of the testimony in that case. *Id*.

Given the Tenth Circuit's disapproval of the Government's approach in *Bahe*, which is similar to Plaintiff's argument here, and the uncertainty in the law as to whether facts about marital communications fall within the privilege, I find that Stiff was justified in instructing Howard not to answer in order to preserve the privilege. *See* Fed. R. Civ. P. 30(c)(2) (stating that "a person may instruct a deponent not to answer only when necessary to preserve a privilege . . . ."); *Dale v. Jordan*, No. 2:16CV733, 2018 WL 10501625, at *2 (E.D. Va. Jan. 31, 2018) (holding that sanctions were not warranted where the attorney's "opposition [to questions at a deposition] was a reasonable, if incorrect, interpretation of a complex statutory privilege").

IV. **The Class Howard Attends as a Condition of Probation.**

Darnell did not allow Howard to answer questions about the "sex offender class" Howard is required to attend because he was concerned about violating the New Mexico Department of

Probation and Parole's rules or HIPAA. *See* [Doc. 69] at 13. Neither reason falls within the parameters of Rule 30(c)(2). Plaintiff's Motion to Compel will be granted as to this topic.

## V. Sanctions.

Plaintiff seeks sanctions under Rule 30(d)(2).[5] I will order Howard to pay the reasonable expenses, including attorneys' fees, of the continued deposition. *See* Fed. R. Civ. P. 30(d)(2) (permitting the court to impose a sanction in the form of "reasonable expenses and attorney's fees incurred by any party[ ]on a person who impedes, delays, or frustrates the fair examination of the deponent"); *Comanche Expl. Co., LLC v. Access US Oil & Gas, Inc.*, No. CIV-19-809-G, 2022 WL 264552, at *2 (W.D. Okla. Jan. 27, 2022) (holding that counsel improperly instructed the client not to answer questions based on relevancy and ordering counsel to pay the reasonable fees and costs of the second deposition). Since I am granting in part and denying in part both Plaintiff's Motion to Compel and Howard's Motion for Protective Order, I will not apportion expenses for the motions. Each party will bear the costs of its own motion. *See* Fed. R. Civ. P. 37(a)(5)(C).

## CONCLUSION

For the foregoing reasons, I will grant Plaintiff's Motion to Compel in part and order Howard to appear for a continued deposition as to Plaintiff's questions about (1) how Howard knew Darnell before Darnell came to represent him, (2) how many times Howard met with Darnell while Darnell represented Howard in the criminal matter, (3) who paid Darnell's fees, and (4) the

---

[5] Plaintiff does not refer to sanctions under § 1927 but does request sanctions for "obstructionist behavior." [Doc. 66] at 2. I find that neither Darnell nor Stiff acted in bad faith or "intentional[ly] or reckless[ly] disregard[ed]" their duties at the deposition and will, therefore, deny Plaintiff's Motion to Compel to the extent she seeks sanctions under § 1927.

class Howard is (or was) required to attend as a condition of his probation. Howard will be required to pay the reasonable costs of the continued deposition, including Plaintiff's attorney's fees.

I will deny without prejudice Plaintiff's Motion to Compel and grant Howard's Motion for Protective Order as to questions about Howard's sexual relationship with his wife, subject to reconsideration as outlined above.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Compel [Doc. 66] be granted in part and denied in part.

**IT IS FURTHER ORDERED** that Howard's Motion for Protective Order [Docs. 69, 76] be granted in part and denied in part.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel be GRANTED and Howard's Motion for Protective Order be DENIED as to Plaintiff's questions about (1) how Howard knew Darnell before Darnell represented him, and (2) how many times Howard met with Darnell while Darnell represented Howard in the criminal matter, (3) who paid Darnell's fees, and (4) the class Howard is (or was) required to attend as a condition of probation.

**IT IS FURTHER ORDERED** that Plaintiff may depose Howard a second time, limited to two additional hours and limited to questions on the topics listed above.

**IT IS FURTHER ORDERED** that Howard shall pay the reasonable expenses, including attorneys' fees and costs, of the continued deposition. The Court DIRECTS the parties to confer and attempt to reach agreement as to payment of Plaintiff's expenses. If the parties cannot agree on these expenses, Plaintiff shall submit to the Court an application for expenses within 10 days of the continued deposition, and Howard may respond within 10 days of the filing of such application.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel be DENIED without prejudice and Howard's Motion for Protective Order be GRANTED as to questions concerning Howard's relationship with his wife.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel be DENIED to the extent Plaintiff seeks sanctions of Howard's counsel under § 1927.

**IT IS FURTHER ORDERED** that each party will bear the expenses of its own motion addressed in this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**UNITED STATES MAGISTRATE JUDGE**