IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

C.H.,

     Plaintiff,

v.                                        Civ. No. 21-574 GBW/JHR

PATRICK HOWARD, *et al.*,

     Defendants.

**ORDER GRANTING DEFENDANT PATRICK HOWARD'S OPPOSED MOTION
FOR LEAVE TO FILE AN ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT, DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE
PLEADINGS AS TO DEFENDANT HOWARD, AND GRANTING DEFENDANT
PATRICK HOWARD'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS**

THIS MATTER comes before the Court on Plaintiff's Motion for Judgment on the

Pleadings as to Defendant Patrick Howard (*doc. 169*), Defendant Patrick Howard's

Opposed Motion for Leave to File an Answer to Plaintiff's First Amended Complaint

(*doc. 171*), and Defendant Patrick Howard's Cross-Motion for Judgment on the

Pleadings (*doc. 172*).  Having reviewed the Motions and their attendant briefing (*docs.

172, 185, 186, 194, 199*), and being otherwise fully advised, the Court will GRANT

Defendant Howard's Motion for Leave to File an Answer (*doc. 171*), DENY Plaintiff's

Motion for Judgment on the Pleadings (*doc. 169*), and GRANT Defendant Howard's

Cross-Motion for Judgment on the Pleadings (*doc. 172*).

I.   BACKGROUND

   A.  Factual Background

At the time of the events giving rise to this case, Plaintiff C.H. was a high school student at Las Cruces High School ("LCHS") in Las Cruces, New Mexico.[1]  *See doc. 62* at ¶ 174.  Defendant Patrick Howard ("Howard") was an agriculture teacher at LCHS and a faculty advisor for LCHS's Future Farmers of America chapter of which Plaintiff was a member.  *See id.* ¶ 15, 46, 174.  Plaintiff alleges that Defendant Howard sexually groomed her and other underage female students at LCHS and subjected them to various forms of educator sexual misconduct during the 2016-2017 and 2017-2018 school years, *see id.* ¶¶ 48-50, 199; *see generally doc. 62*.

Plaintiff alleges that Defendant Howard "engaged in common [sexual] grooming behaviors with [her]," including by taking "methodical steps to build a relationship with [her] and gain her trust."  *Id.* ¶¶ 175-76.  She alleges he would "frequently comment on [her] physical appearance" by telling her she was "beautiful" in the hallway of LCHS and on "school-sponsored excursions," *id.* ¶¶ 57, 177, and that

---

[1] The First Amended Complaint contains seemingly contradictory allegations concerning the duration of the alleged misconduct personally experienced by C.H.  While some of Plaintiff's allegations suggest that the misconduct she experienced personally only took place during the 2017-2018 school year, *see doc. 62* ¶ 174 ("Defendant Howard was sexually harassing and sexually abusing C.H. only during the 2017-2018 school year, when she was a 15-year-old sophomore student at Las Cruces High School and an FFA member."), other allegations suggest that she also experienced misconduct during the 2016-2017 school year, *see id.* ¶¶ 51, 55.

Defendant Howard also "knew [Plaintiff's] father from college and exploited this relationship to gain [Plaintiff's] trust," *id.* ¶ 176.  Plaintiff alleges that Defendant Howard would give her "too tight frontal hugs that forced her breasts to be push[ed] against his body" and which she "could not escape . . . because they were so strong and tight." *Id.* ¶¶ 178-79.  Additionally, she alleges two specific instances of physical misconduct: first, in December 2017, Defendant Howard grabbed her on the "back of her upper thigh, under her buttocks, in his classroom, *id.* ¶ 180, and in January 2018, Defendant Howard massaged her shoulders and "prevented her from pulling away from his grasp" in front of other students at LCHS, *id.* ¶ 185.

### B.  Procedural History

Plaintiff C.H. filed her Original Complaint for Damages for Violations of Civil Rights and State Torts ("Original Complaint") on June 23, 2020, bringing an equal protection claim under the Fourteenth Amendment against Defendant Howard and a claim for negligent operation of a building against Defendant LCPS.  *See doc. 1.* Defendant Howard filed an answer to the Original Complaint on July 2, 2021, *see doc. 4.* The parties engaged in discovery and a court-mediated settlement conference and actively litigated various pretrial matters.

On January 25, 2022, Plaintiff filed an unopposed motion for leave to file an amended complaint, *see doc. 58*, which the Court granted, *see doc. 61.*  Plaintiff filed her

First Amended Complaint for Damages for Violations of Civil Rights and State Torts

("First Amended Complaint") on January 28, 2022, adding claims against Defendant

Howard for a violation of her right to substantive due process under the Fourteenth

Amendment, battery, and intentional infliction of emotional distress. *Doc. 62* ¶¶ 189-

206, 316-324. The First Amended Complaint also added two individual Defendants and

new claims against Defendant LCPS for Title IX violations, violations of Plaintiff's right

to equal protection under the Fourteenth Amendment, municipal liability pursuant to

42 U.S.C. § 1983, and intentional infliction of emotional distress. *See generally doc. 62*.

Pursuant to Rule 15(a), Defendant Howard's responsive pleading was due on February

11, 2022, but none was filed. *See* Fed. R. Civ. P. 15(a)(3). The discovery period closed on

October 31, 2022. *See doc. 161*.

    On November 18, 2022, more than nine months after Defendant Howard's

responsive pleading was due, Plaintiff filed her Motion for Judgment on the Pleadings

as to Defendant Patrick Howard based on his failure to answer the First Amended

Complaint. *Doc. 169*. On November 28, 2022, Defendant Howard filed a Response to

Plaintiff's Motion for Judgment on the Pleadings and Cross-Motion for Judgment on the

Pleadings. *Doc. 172*. On the same day, he also filed his Opposed Motion for Leave to

File an Answer to Plaintiff's First Amended Complaint. *Doc. 171*. Briefing on the

parties' cross motions for judgment on the pleadings and Defendant Howard's Motion

for Leave to File an Answer is complete, *see docs. 195, 200, 218,* and these motions are ready for decision.

## II.   LEGAL STANDARDS

### A.  Rule 6(b)(1)(B)

Federal Rule of Civil Procedure 6(b)(1)(B) governs extensions of time when the time for completing an act has already passed.  Fed. R. Civ. P. 6(b)(1)(B).  Courts may allow a movant to file an untimely pleading under Rule 6(b)(1)(B) if the movant can show excusable neglect.  *See Cato v. Hargrove*, 836 F. App'x 722, 724 (10th Cir. 2020). "[A] finding of excusable neglect under Rule 6(b)(1)(B) requires both a demonstration of good faith by the [movant] and also it must appear that there was a reasonable basis for not complying within the specified period."  *Stark-Romero v. Nat'l R.R. Passenger Co. (AMTRAK),* 275 F.R.D. 544, 547 (D.N.M. 2011) (internal brackets removed) (quoting *Anderson v. Bank of Am.* (*In re Four Seasons Sec. Laws Litig.*), 493 F.2d 1288, 1290 (10th Cir. 1974)).  Generally speaking, under Rule 6(b), "inadvertence, ignorance of the rules, and mistakes construing the rules do not constitute excusable neglect."  *Scull v. Mgmt. & Training Corp.,* No. CIV 11-0207 JB/RHS, 2012 WL 1596962, at *5 (D.N.M. May 2, 2012) (quoting *Quigley v. Rosenthal*, 427 F.3d 1232, 1238 (10th Cir. 2005)).

Courts consider the following factors when determining whether a movant has shown excusable neglect: (i) the danger of prejudice to the opposing party; (ii) the

length of the delay and its potential impact on the proceedings; (iii) the reason for the delay and whether that reason was within the reasonable control of the movant; and (iv) whether the movant acted in good faith. *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1253 (10th Cir. 2017). Among these factors, the reason for the delay is the most important. *Id.* Nevertheless, "[a] determination of whether a party's neglect is excusable 'is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'" *Beebe v. Todd*, Civ. No. 19-545 JHR/JFR, 2020 WL 3639734, at *2 (D.N.M. July 6, 2020) (quoting *United States. v. Torres*, 372 F.3d 1159, 1162 (10th Cir. 2004)).

### B. Fed. R. Civ. P. 12(c)

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A Rule 12(c) motion for judgment on the pleadings is treated like a motion to dismiss under Rule 12(b)(6). *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002) (stating that "[w]e use the same standard when evaluating 12(b)(6) and 12(c) motions"). For purposes of a Rule 12(c) motion, the Court assumes that the well-pleaded allegations in the complaint are true and construes them in the light most favorable to the nonmoving party. *Realmonte v. Reeves*, 169 F.3d 1280, 1283 (10th Cir.

6

1999).  In evaluating the legal sufficiency of the complaint under Rule 12(c), "[t]he court's function . . . is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quoting *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir.1999)).

### III.   ANALYSIS

The Court will address Defendant Howard's Motion for Leave to File an Answer and Plaintiff's Motion for Judgment on the Pleadings before turning to Defendant Howard's Cross-Motion for Judgment on the Pleadings.

### A.  Good Cause Exists for Permitting Defendant Howard to File an Answer to Plaintiff's First Amended Complaint

As discussed above, the "excusable neglect" standard is an equitable one that requires consideration of four factors, which are (i) the danger of prejudice to the opposing party; (ii) the length of the delay and its potential impact on the proceedings; (iii) the reason for the delay and whether that reason was within the reasonable control of the movant; and (iv) whether the movant acted in good faith, although the most important factor is the reason for the delay and whether it was within the reasonable control of the movant, *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1253 (10th Cir. 2017). Having weighed the foregoing factors, the Court finds that Defendant Howard has

7

shown excusable neglect such that an extension of time for him to file an answer to
Plaintiff's First Amended Complaint is warranted.  However, the Court does not find
excusable neglect with respect to Defendant Howard's failure to assert the defense of
qualified immunity in his answer to the Original Complaint, so the Court will not
permit him to include that defense in his answer.

The Court addresses the factors out of order, beginning with the second factor.
With respect to this factor—the length of the delay and its impact on the proceedings—
the Court finds that the nine-month duration of Defendant Howard's delay in filing an
answer to the First Amended Complaint has not negatively impacted the proceedings.
Although this length of delay is facially significant, Plaintiff has not been harmed by the
delay, and other courts have not found delays of comparable or greater length to
preclude a finding of excusable neglect in similar circumstances.  *See Grandbouche v.
Clancy*, 825 F.2d 1463, 1467-68 (10th Cir. 1987) (finding the district court did not abuse
its discretion in denying a motion for default judgment when the answer was filed
almost one year late, where the plaintiff had not been prejudiced by the delay,
discovery was proceeding, and the plaintiff was on notice of several of the defendants'
defenses); *Griffin v. Suthers*, 156 F. App'x 66, 71-72 (10th Cir. 2005) (finding that a district
court did not abuse its discretion in finding excusable neglect where an answer to an
amended supplemental complaint had not been filed for seven months); *Post v. Gilmore*,

91 F. App'x 513, 514 (7th Cir. 2004) (finding that the trial court did not abuse its

discretion in permitting the defendants leave to file an answer approximately fourteen

months after it was due because the court "[found] it hard to imagine how [the plaintiff]

could have been harmed when everyone assumed that the defendants continued to

deny the essence of [the plaintiff's] claims and discovery and other pre-trial matters

proceeded on that basis").

The third and fourth factors are the reason for the delay and whether the movant

acted in good faith.  With respect to the reason for the delay, which is the most

important factor, *see Perez*, 847 F.3d at 1253, the Court notes that "[g]enerally, courts are

more forgiving of missed deadlines caused by clerical calendaring errors, mathematical

miscalculations of deadlines and mishandling of documents, but are less forgiving

when deadlines are missed due to lawyering mishaps, such as where counsel

misconstrues or misinterprets the rules or makes poor tactical decisions," *Scott v. Raudin*

*McCormick, Inc.*, No. 08-4045-EFM, 2010 WL 3125955, at *2 (D. Kan. Aug. 6, 2010)

(collecting cases).  Contrary to Plaintiff's argument, courts in this circuit have found that

a calendaring error constitutes excusable neglect, particularly when the calendaring

issue is an isolated error.  *See Taitt-Phillip v. Lockheed Martin Corp.*, Civ. No. 21-150

DHU/GBW, 2022 WL 1262217, at *5-6 (D.N.M. Apr. 28, 2022) (explaining that "multiple

district courts in this circuit have held that simple calendaring errors may constitute

excusable neglect" but "when a calendaring error arises in the context of a party's pattern of dilatory conduct during discovery, courts are less likely to find that the error constitutes excusable neglect").

Here, Defendant Howard explains that the reason he failed to file an answer to the First Amended Complaint was a "clerical, calendaring error" caused by the departures of Ann Keith, lead counsel for Defendant Howard, and her legal assistant from their law firm shortly prior to the holiday season and when Plaintiff filed her First Amended Complaint. *Doc. 171* at 2. In response, Plaintiff argues that Defendant Howard's explanation for the calendaring error is not believable because: (1) the time span between Ms. Keith's departure from her firm, the holiday season, and Plaintiff's filing of her First Amended Complaint is not as compressed as Defendant Howard represents; and (2) Defendant Howard's counsel was given notice on multiple occasions that Plaintiff planned to file an amended complaint—most notably, when Defendant Howard was contacted for his position on Plaintiff's motion to file her First Amended Complaint and Defendant Howard's new lead counsel stated that he did not oppose the motion. *See doc. 185* at 6-7. Despite the issues highlighted by Plaintiff, the Court is not aware of any evidence that Defendant Howard's failure to file a timely answer was anything more than a simple, one-time calendaring error. The Court also does not find

any evidence of bad faith[2] or willfulness on the part of Defendant Howard; to the contrary, once Defendant Howard became aware of the error when Plaintiff filed her Motion for Judgment on the Pleadings, Defendant Howard acted quickly to remedy it. Therefore, the Court finds that the final two factors weigh in favor of Defendant Howard.  *See Downey v. Am. Nat'l Prop. & Cas. Co.*, No. 1:11-CV-00587-MCA-KBM, 2012 WL 13071548, at *3 (D.N.M. Mar. 31, 2012) (finding, where there was no suggestion that a calendaring error occurred in bad faith, that the circumstances merited a finding of excusable neglect); *Brown v. Univ. of Kansas*, No. 10-2606-WEB, 2011 WL 1700141, at *2-3 (D. Kan. May 4, 2011) (finding that an administrative error was due to carelessness as opposed to bad faith and therefore fell "within the realm of" excusable neglect).

Finally, the Court considers the first factor, the danger of prejudice to the opposing party.  Plaintiff's litigation activities thus far indicate that she has litigated under the assumption that Defendant Howard denies the factual bases of her claims

---

[2] The Court disagrees with Plaintiff's argument that Defendant Howard has shown a pattern of dilatoriness throughout his prosecution of the case because his "pleadings were minimal" and some of his filings in this case have "piggybacked" on those of Defendant LCPS.  *See doc. 185* at 7-8.  As Defendant Howard points out, *see doc. 194* at 9, the Local Rules permit a party to adopt another party's motion or other paper by reference, D.N.M.LR-Civ. 7.1(a).  Additionally, the Court considers the substance of Defendant Howard's various filings in this matter to be significantly less probative of a pattern of dilatoriness than Defendant Howard's general history of compliance or noncompliance with Court orders and deadlines.  *See Candelaria v. Molina Healthcare, Inc.*, Civ. No. 18-725 WJ/GBW, 2019 WL 4643946, at *8 (D.N.M. Sept. 24, 2019) (collecting cases and examining how courts in various circuits take a movant's overall diligence into account under the Rule 16(b)(4) good cause standard after stating that courts do so "in the same manner" under Rule 16(b)(4) and Rule 6(b)).

against him and not under the assumption that he admitted the factual allegations

against him.  For instance, Plaintiff served discovery on Defendant Howard, *see doc. 71*,

deposed witnesses identified by him, and took his deposition, *see doc. 146-3*.  In other

words, Plaintiff has proceeded in this litigation as if Defendant Howard filed an answer

denying the factual allegations against him.  In these circumstances, courts are less

likely to find that prejudice has occurred.  *See Carrasco v. M&T Bank*, Civil Case No.:

SAG-21-532, 2021 WL 4846844, at *9 (D. Md. Oct. 18, 2021) (finding that no prejudice

was caused by a party's failure to respond to an amended complaint, given that the

party filed an answer to the initial complaint and the case had proceeded through

discovery and cross motions for summary judgment despite the absence of the answer);

*cf. Morgan v. Vogler L. Firm, P.C.*, Case No. 4:15-CV-1654 SNLJ, 2017 WL 1374740, at *2

(E.D. Mo. Apr. 17, 2017) (finding prejudice where the discovery period had closed and

the nonmovant represented that it relied upon its belief that the complaint's factual

allegations about liability had been admitted by the movant's failure to answer when

designing its discovery requests).  Although the discovery period is now closed,

Plaintiff does not argue that she would need to pursue any additional discovery if

Defendant Howard is permitted to file his answer to the First Amended Complaint.

Moreover, although the First Amended Complaint added three claims against

Defendant Howard and several new factual allegations, the newly added claims against

Defendant Howard are based on the same conduct that was at issue in the Original Complaint. *Compare doc. 1* at ¶¶ 18-23, *with doc. 62* at ¶¶ 20, 48, 50, 52, 72, 172-180, 185-86.

The Court notes, however, that Defendant Howard seeks to raise the defense of qualified immunity for the first time in his proposed answer to the First Amended Complaint. *Compare doc. 4* at 9-10 *with doc. 171* at 59. Defendant Howard offers no explanation for why he did not include a qualified immunity defense in his answer to the Original Complaint even though the Original Complaint brought an equal protection claim against him under the Fourteenth Amendment. *See doc. 1* at ¶¶ 33-39. Nor does he explain why he is seeking to assert qualified immunity for the first time at this stage of the proceedings. *See generally docs. 171; 194.* Additionally, as the dispositive motions deadline has passed, *see doc. 161*, any dispositive motion filed by Defendant Howard on the basis of qualified immunity at this stage of the proceedings would be untimely. Therefore, the Court does not find that Defendant Howard has shown excusable neglect for failing to include a qualified immunity defense in his answer to the Original Complaint.

However, the Court does not find that the inclusion of a qualified immunity defense in Defendant Howard's proposed answer to the First Amended Complaint constitutes grounds for entirely denying him leave to file a second answer. The Court

notes Defendant Howard's suggestion that the Court could allow him to file an answer without the affirmative defense of qualified immunity, or strike that defense from his proposed answer, in order to "moot" Plaintiff's argument that she would be prejudiced by his new assertion of the defense. *See doc. 194* at 4. In order to remove the prejudice that would be caused to Plaintiff by Defendant Howard's introduction of a qualified immunity defense for the first time at this stage of the proceedings, the Court will grant Defendant Howard leave to file his proposed answer to the First Amended Complaint, which he has attached to his Motion for Leave to File an Answer, *see doc. 171* at 11-61, only if he strikes the portion of his proposed answer that asserts a qualified immunity defense, *see id.* at 59.

In summary, the Court finds that the foregoing circumstances, in addition to the Court's preference to decide claims on their merits rather than on pleading technicalities, *see Foman v. Davis*, 371 U.S. 178, 181 (1962), warrant finding that Defendant Howard has shown excusable neglect for his failure to file a timely answer to Plaintiff's First Amended Complaint, except for the portion of his answer which seeks to newly assert a defense of qualified immunity. The Court therefore will permit Defendant Howard to file an answer to Plaintiff's First Amended Complaint that excludes the affirmative defense of qualified immunity.

14

### B. Plaintiff's Motion for Judgment on the Pleadings as to Defendant Patrick Howard (*Doc. 143*)

Plaintiff's Motion for Judgment on the Pleadings requests the Court to enter judgment for Plaintiff on all four of her claims against Defendant Howard and "an order prohibiting Defendant Howard from raising any defenses under Rule 12(b)(2)-(7) and any affirmative defenses as required by Rule 8(c)" based on Defendant Howard's failure to file an answer to the First Amended Complaint. *Doc. 169* at 1, 7. As set forth above, the Court finds that Defendant Howard should be permitted to file an answer that does not include the affirmative defense of qualified immunity. With the exception of a qualified immunity defense, the proposed answer that Defendant Howard has attached to his Opposed Motion for Leave to File an Answer to Plaintiff's First Amended Complaint, *see doc. 171* at 11-61, contains identical affirmative defenses to those in his answer to the Original Complaint, *compare doc. 4* at 9-10 *with doc. 171* at 59-60. Therefore, because the Court is granting Defendant Howard leave to file an answer to the First Amended Complaint, the Court will deny Plaintiff's Motion for Judgment on the Pleadings (*doc. 169*) as moot.

### C.  Defendant Howard's Cross-Motion for Judgment on the Pleadings (*Doc. 172*)

Defendant Howard moves for judgment in his favor on three of Plaintiff's four claims against him, namely, her substantive due process claim and tort claims for battery and intentional infliction of emotional distress.  *Doc. 172* at 10.

#### i.  Substantive Due Process

Substantive due process "bar[s] certain government actions regardless of the fairness of the procedures used to implement them."  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998).  "The Supreme Court has found substantive due process violations where government action has infringed a 'fundamental' right without a 'compelling' government purpose, as well as where government action deprives a person of life, liberty, or property in a manner so arbitrary it 'shocks the conscience.'"  *Abdi v. Wray*, 942 F.3d 1019, 1027 (10th Cir. 2019) (internal citations omitted).  In the Tenth Circuit, courts apply the fundamental-rights approach when the plaintiff challenges legislative action and the shocks-the-conscience approach when the plaintiff seeks relief for tortious executive action.  *Halley v. Huckaby*, 902 F.3d 1136, 1153 (10th Cir. 2018).

Plaintiff alleges that both the fundamental-rights and the shocks-the-conscience approach to substantive due process violations are relevant to her claim, *see doc. 62* at ¶ 189, but the Court finds that Plaintiff's substantive due process claim against Defendant Howard is properly analyzed under the shocks-the-conscience approach rather than the

fundamental-rights approach.  As alleged in the First Amended Complaint, the basis for

Plaintiff's substantive due process claim is Defendant Howard's "use[] [of] his position

of authority as a teacher and . . . advisor to sexually abuse Plaintiff" by "repeatedly and

continuously touch[ing] intimate and/or erogenous areas of Plaintiff's body during the

2016-2018 school years."  *Id.* at ¶¶ 194-95.  Consequently, Plaintiff has alleged that the

nature of the interference with her right to bodily integrity was executive action, and

the Court will evaluate her claim under the 'shocks the conscience' standard.

The standard for a 'shocks the conscience' substantive due process claim is

whether a challenged government action shocks the conscience of federal judges.

*Hernandez v. Ridley*, 734 F.3d 1254, 1261 (10th Cir. 2013).  The challenged conduct must

be "conscience shocking[] in a constitutional sense," *Brown v. Montoya*, 662 F.3d 1152,

1172 (10th Cir. 2011) (quoting *Lewis*, 523 U.S. at 847), which means the conduct must far

exceed mere negligence, *Halley*, 902 F.3d at 1155.  Conduct shocks the conscience when

it is "so brutal and offensive that it [does] not comport with traditional ideas of fair play

and decency."  *See Lewis*, 523 U.S. at 847 (quoting *Breithaupt v. Abram,* 352 U.S. 432, 435

(1957)).  Therefore, to prevail on a substantive due process claim, a plaintiff must

"demonstrate a degree of outrageousness and a magnitude of potential or actual harm

that is truly conscience shocking."  *Camuglia v. The City of Albuquerque*, 448 F.3d 1214,

1222 (10th Cir. 2006) (quoting *Uhlrig v. Harder,* 64 F.3d 567, 574 (10th Cir. 1995)).

"Conduct intended to injure in some way unjustifiable by any government interest," meaning arbitrary government action that is "unrestrained by the established principles of private right and distributive justice," "is the sort of official action that rises to the conscience-shocking level." *Lewis*, 523 U.S. at 845, 849 (quotations omitted).

In *Abeyta By & Through Martinez v. Chama Valley Independent School District, No. 19*, the Tenth Circuit Court of Appeals affirmed the broad proposition that "[s]exual assault or molestation by a school teacher violates a student's substantive due process rights," 77 F.3d 1253, 1255 (10th Cir. 1996).  Other circuits have likewise held that sexual abuse of a schoolchild at the hands of a school employee violates the Due Process Clause.  *See, e.g., Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 726 (3d Cir. 1989) (stating that a teacher's sexual molestation of a student violates a student's right to bodily integrity under the Due Process Clause); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451 (5th Cir. 1994) (stating that a public schoolteacher's physical sexual abuse of a student infringes the student's rights under the Fourteenth Amendment); *P.H. v. Sch. Dist. of Kansas City, Missouri*, 265 F.3d 653, 658 (8th Cir. 2001) (stating that "[i]t is well-settled that the Due Process Clause of the Fourteenth Amendment protects the liberty interest of a child in public school from sexual abuse"); *Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 506 (6th Cir. 1996) (stating that

students' "right to be free from sexual abuse at the hands of a public school teacher is clearly protected by the Due Process Clause of the Fourteenth Amendment").

However, the *Abeyta* court did not clearly define the type of conduct that constitutes 'sexual assault or molestation,' and courts in this and other circuits have subsequently held that not all teacher/student touching that is sexual in nature is unconstitutional.  *See N.F. on behalf of M.F. v. Albuquerque Pub. Sch.*, Case No. 14-cv-699 SCY/RHS, 2015 WL 13667294, at *3 (D.N.M. Jan. 30, 2015) (discussing *Abeyta* and concluding that the *Abeyta* decision is not best read to affirm that all unwelcome sexual contact between a teacher and student is actionable); *see also S.M. v. Bloomfield Sch. Dist.*, Case No. 16-cv-823 SCY/WPL, 2017 WL 3159166, at *7 (D.N.M. June 12, 2017) (collecting cases in which sexually motivated touching of a student by a school employee was not found to be unconstitutional).  Courts instead undertake a "highly fact specific" inquiry to determine whether alleged improper sexual touching of a student by a teacher is sufficiently offensive and egregious to be deemed conscience shocking.  *See Garrity v. Governance Bd. of Cariños Charter Sch.*, Civ. No. 19-95 JAP/JHR, 2020 WL 5074385, at *3 (D.N.M. Aug. 27, 2020).

This fact-specific inquiry is guided by "general principles" that bear on whether conduct meets the high threshold of offensiveness and egregiousness required for a substantive due process violation.  *See id.*  First, "a teacher's sexually motivated,

unwelcome physical contact with a student is not necessarily conscience shocking." *Id.*

(quoting *N.F. on behalf of M.F.*, 2015 WL 13667294, at *4).  Second, "inappropriate

touching of a student is much more likely to be actionable under the due process clause

if it involves the touching of certain erogenous zones, such as the genitals, the breasts,

or the buttocks." *Id.*  Third, "teacher abuse is more likely to be considered brutal,

inhumane, and conscience shocking if it happens more than once or repeatedly occurs

over a long period of time." *Id.*

To reiterate, the misconduct that Plaintiff alleges as the basis for her substantive

due process claim is: Defendant Howard's "exploit[ation]" of his relationship with

Plaintiff's father to gain Plaintiff's trust as Defendant Howard sexually groomed

Plaintiff, *doc. 62* at ¶¶ 175-76; Defendant Howard complimenting Plaintiff on her

physical appearance "multiple times," *id.* ¶ 177; Defendant Howard giving Plaintiff

"too tight frontal hugs that forced her breasts to be push[ed] against his body," *id.* ¶

178; one instance of Defendant Howard "massag[ing] [Plaintiff's] shoulders[] and

prevent[ing] her from pulling away from his grasp[] in front of her peers," *id.* ¶ 185; and

one instance of Defendant Howard grabbing Plaintiff's "upper thigh, under [her]

buttocks" in his classroom, *id.* ¶ 180.  Although the conduct alleged by Plaintiff is

wholly inappropriate, it is not so outrageous, shocking, and inhumane so as to give rise

to a substantive due process claim.

Importantly, none of the alleged misconduct involves the fondling of any body part considered intimately private, such as the buttocks, breasts, or genitals.  Although Plaintiff argues that she has alleged Defendant Howard touched her on her "intimately private parts" because the First Amended Complaint contains allegations that "Defendant Howard repeatedly and continuously touched intimate and/or erogenous areas of Plaintiff's body," and that Defendant Howard pled guilty to a count of Battery for touching Plaintiff's buttocks, *see doc. 186* at 6 (citing *doc. 62* ¶¶ 195, 198), the First Amended Complaint does not contain any specific allegation asserting that Defendant Howard touched Plaintiff's buttocks on any particular occasion, *see generally doc. 62*. Instead, the only specific conduct that the First Amended Complaint links to Defendant Howard's guilty plea is one instance of Defendant Howard "touching [Plaintiff's] upper thigh, under [her] buttocks, without her consent" in his classroom.  *See id.* ¶¶ 172, 180, 197.  The Court is not convinced that alleging that Defendant Howard touched Plaintiff "under her buttocks" is the same thing as alleging that Defendant Howard touched Plaintiff's buttocks for purposes of evaluating whether Plaintiff has alleged that she was touched on a particularly intimate area of her body.  *See Sh.A as Next Friend of J.A. v. Tucumcari Mun. Sch.*, No. CV 00-727 JP/DJS-ACE, 2001 WL 37124734, at *4 (D.N.M. Oct. 17, 2001) (stating that the touching of a student's thigh "almost to the point of where [the student's] leg meets his body" did not constitute "touching of any body part

considered intimately private"). The Court therefore disagrees that Plaintiff has alleged that Defendant Howard touched Plaintiff's buttocks or that Defendant Howard touched a particularly intimate part of her body.

Plaintiff also argues that she has alleged Defendant Howard touched an intimate area of her body because she alleges he "repeatedly" gave her frontal hugs "with the intent to feel her breasts pushed against him," *doc. 186* at 5-6 (citing *doc. 62* ¶ 196), but a hug—even if initiated with the goal of indirectly feeling the breasts of the recipient of the hug— is materially less shocking than the direct fondling or touching of a student's breasts. Indeed, previous cases in which courts have found a teacher's touching of a student's breasts to support a substantive due process claim have involved touching significantly more aggressive than what Plaintiff alleges here. For example, in *S.M. v. Bloomfield School District*, the plaintiff alleged a teacher had pulled her shirt down with his finger while brushing his hand across her breasts, pinched her on her ribs, "aggressively" touched her body and breasts with his hands despite her objections, placed the corner of a manila envelope down the front of her shirt while questioning her about her bra, and later resumed "grabbing at [her] body again and threatened to pinch her breasts." 2017 WL 3159166, at *1. And in *Lillard v. Shelby County Board of Education*, one plaintiff alleged her high school soccer coach had "placed his hands between [her] breasts." 76 F.3d 716, 721 (6th Cir. 1996). Although the Court does not

hold that touching of a student's breasts must be done with a teacher's hands in order to be actionable under the Due Process Clause, the Court does find that, without a pattern of substantially more egregious conduct, Defendant Howard's tight frontal hugs of C.H. do not necessarily shock the conscience just because they caused contact with C.H.'s breasts.

Because Plaintiff does not allege that Defendant Howard touched—at least directly—any particularly intimate or erogenous area of her body, the Court finds the nature of the conduct alleged in this case to be most similar to conduct other courts have found to not shock the conscience. For example, in *Lillard*, a second plaintiff alleged the defendant had rubbed her stomach in a high school hallway while making a sexually suggestive remark. *Id.* at 726. The Sixth Circuit Court of Appeals held that the alleged conduct, despite being "wholly inappropriate, and, if proved, should have serious disciplinary consequences for [the defendant]," was "simply . . . not of the outrageous and shocking character that is required for a substantive due process violation." *Id.* It might be argued that, unlike the second plaintiff in *Lillard*, who alleged a single incident involving sexualized touching, Plaintiff here has alleged multiple instances of sexualized touching, *see doc. 62* ¶¶ 185, 195-97. However, in *Sh.A as Next Friend of J.A. v. Tucumcari Municipal Schools*, the court found that weeks or months-long touching of two students' chests and backs underneath their shirts by a

teacher, accompanied by the teacher's rubbing of the students' thighs underneath their shorts above their knees, did not shock the conscience. 2001 WL 37124734, at *4. Although, unlike here, there were no allegations in *Sh.A* that suggested the defendant's touching of the plaintiffs was done for his sexual gratification, *id.*, the touching in that case was at least as troubling from a conscience-shocking standpoint as that alleged by Plaintiff. In *Sh.A*, one plaintiff was touched on his thigh "from his knee . . . 'almost to the point of where his leg [met] his body [the body]'" under his shorts and the other was touched "underneath his shorts, above his knee" multiple times, *id.* at *1-2, while Plaintiff alleges a single instance in which Defendant Howard touched the back of her thigh over clothing, *doc. 62* ¶ 197. Likewise, the *Sh.A* plaintiffs were touched on their chests and backs under their shirts repeatedly, 2001 WL 37124734, at *1-2, while Plaintiff alleges a single instance in which Defendant Howard gave her a shoulder massage, *doc. 62* at ¶ 185.

Finally, the Court finds the instant allegations to be particularly similar to those in *Gillam v. USD No. 244 Sch. Dist.*, 397 F. Supp. 2d 1282, 1288 (D. Kan. 2005), on the grounds they involve both non-physical and physical misconduct; they took place in a high school setting over about two school years; and although none of the physical misconduct involved the touching of particularly intimate areas on Plaintiff's body, there are allegations suggesting that the misconduct was done for Defendant Howard's

sexual gratification.  In *Gillam*, the plaintiff alleged that her high school teacher had inappropriately put his arm around her, touched her by leaning over her desk, and "approached her from behind [and] leaned into her[,] pressing his torso into her back" while whispering "you know you do make my heart sing," among other non-physical misconduct.  *Id.* at 1285.  The *Gillam* court found under the Rule 12(c) standard that the physical misconduct at issue did not constitute sexual molestation or assault within the meaning of *Abeyta* and therefore, while "unacceptable," the conduct was not conscience-shocking so as to violate the plaintiff's constitutional right to bodily integrity.  *Id.* at 1287-88.

In summary, although the misconduct alleged by Plaintiff is reprehensible, it does not rise to the "high level of 'a brutal and inhuman abuse of official power literally shocking to the conscience'" that is required for a substantive due process violation.  *See Abeyta*, 77 F.3d at 1257-58 (citation omitted).  Therefore, Defendant Howard's Cross-Motion must be granted as to Plaintiff's substantive due process claim.

> ### *ii.   Battery and Intentional Infliction of Emotional Distress*

It is undisputed that Defendant Howard is a public employee within the meaning of the New Mexico Tort Claims Act ("NMTCA").  *See doc. 62* at ¶ 19.  As such, he is immune from liability for any tort committed within the scope of his public duties, except as immunity is expressly waived in the NMTCA.  *See* N.M. Stat. Ann. §§ 41-4-

2(A) (providing that, unless excepted, a public employee acting within the scope of duty is granted immunity from liability for any tort), 41-4-4(A), 41-4-17(A).  Here, Defendant Howard argues that he is entitled to immunity from Plaintiff's tort claims because the NMTCA does not waive liability for intentional infliction of emotional distress claims or battery claims that are not brought against law enforcement officers.  *See doc. 172* at 10. In response, Plaintiff does not make any arguments about the applicability of the NMTCA waiver provisions but instead argues that Defendant Howard has waived any immunity defense by failing to file a timely answer to the First Amended Complaint. *See doc. 186* at 8-9.

As explained above, the Court is permitting Defendant Howard to file his proposed answer to Plaintiff's First Amended Complaint out of time but is prohibiting him from including the defense of qualified immunity.  *See supra* Section A.  The Court does not find that Defendant Howard has waived the defense of the absence of a waiver of immunity under the NMTCA for Plaintiff's state law claims, because he included this defense in his original answer and also includes it in his proposed answer to Plaintiff's First Amended Complaint.  *See doc. 4* at 9; *doc. 171* at 59.  Consequently, the Court turns to the merits of Defendant Howard's sovereign immunity defense pursuant to the NMTCA.  Although Plaintiff's First Amended Complaint states that Plaintiff's tort claims against Defendant Howard are brought pursuant to waivers under the New

Mexico Tort Claims Act, *see doc. 62* at 1-2, it does not specify which waivers, specifically, would permit Plaintiff's causes of action.  Plaintiff's response to Defendant Howard's Cross-Motion for Judgment on the Pleadings also fails to cite to a specific waiver provision and appears to abandon the argument that there is an applicable NMTCA waiver.  *See doc. 186* at 8-9.

Without a citation from Plaintiff to a specific immunity waiver provision and having found none in its independent review of the statute, the Court concludes that none of the NMTCA's express immunity waivers permit Plaintiff to bring her Battery and IIED claims against Defendant Howard.  *See* N.M. Stat. Ann. §§ 41-4-5 through 41-4-12.  "The NMTCA waives immunity for intentional torts . . . only when they are committed by law enforcement officers acting within the scope of their duties," *Garcia v. Martinez*, 414 F. Supp. 3d 1348, 1357 (D.N.M. 2019), and there is no allegation that Defendant Howard was a law enforcement officer at the time in question.  In addition, the NMTCA contains no waiver for IIED claims.  *Cordova v. Cnty. of Bernalillo*, Civil No. 03-1372 WJ/WDS, 2004 WL 7338317, at *2-3 (D.N.M. Jan. 28, 2004).  The Court therefore concludes that Defendant Howard is entitled to judgment as a matter of law on Plaintiff's tort claims against him based on his immunity to those claims under the NMTCA.

IV.   CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

(i)   Defendant Patrick Howard's Opposed Motion for Leave to File an Answer to Plaintiff's First Amended Complaint (*doc. 171*) is **GRANTED.**  Defendant Howard shall **STRIKE** the affirmative defense of qualified immunity from his proposed Answer to Plaintiff C.H.'s First Amended Complaint for Damages for Violations of Civil Rights and State Torts (*see doc. 171* at 11-61) and file his Answer **within five (5) days of the date of this Order.**

(ii)  Plaintiff's Motion for Judgment on the Pleadings as to Defendant Patrick Howard (*doc. 169*) is **DENIED**.

(iii) Defendant Patrick Howard's Cross-Motion for Judgment on the Pleadings (*doc. 172*) is **GRANTED**.  Plaintiff's substantive due process, battery, and intentional infliction of emotional distress claims against Defendant Howard are DISMISSED.  Plaintiff's equal protection claim against Defendant Howard remains.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**